NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

A–1 EXCELSIOR VAN & STORAGE
COMPANY, Inc., Respondent.

No. 19210.

United States Court of Appeals
Eighth Circuit.

Dec. 3, 1968.

Leonard M. Wagman, Atty., N. L. R. B., Washington, D. C., for petitioner; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Allen J. Berk, Atty., N. L. R. B., on the brief.

Stanley V. Shanedling, of Shanedling, Phillips, Gross & Aaron, Minneapolis, Minn., for respondent.

Before MATTHES, MEHAFFY and HEANEY, Circuit Judges.

MATTHES, Circuit Judge.

The National Labor Relations Board has petitioned this Court, pursuant to § 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), to enforce its order issued against A–1 Excelsior Van & Storage Company, Inc. (Respondent) reported at 165 N.L.R.B. No. 45.

The salient facts are incorporated in the trial examiner's decision and need not be reiterated in detail here. Respondent, a Minnesota corporation, incorporated January 1, 1966, was at all pertinent times engaged in long distance and local moving. The complaint, issued on August 31, 1966, was based upon a charge filed by Local 544, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Union). The complaint alleged that Respondent violated § 8(a) (1), (3) and (5) of the Act, as amended. In general, the complaint charged that Respondent had improperly interrogated employees, had threatened to subcontract the employee's work because of their affiliation with Union, had reduced the employees' hours of work and subsequently discharged them because of their Union adherence, and had failed to bargain with the Union.

After a full hearing in October, 1966, the trial examiner in his decision concluded that Respondent had not engaged in the alleged unfair labor practices. The examiner recommended that the Board enter an order dismissing the complaint in its entirety. The Board rejected the examiner's recommendation and found that Respondent had engaged in conduct violative of § 8(a) (1), (3) and (5) of the Act. It entered a cease and desist order and affirmatively directed Respondent to reopen its local warehouse and moving department and offer to reinstate and make whole the three employees who had been affected by Respondent's discontinuance of its local moving. Respondent was also directed to bargain with the Union.

■ Once again, the question for determination is whether the Board's findings are supported by substantial evidence on the whole record. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). In *Universal Camera*, the Supreme Court stated, inter alia, that Congress has imposed upon reviewing courts the responsibility for assuring that the Board keeps within reasonable grounds; that

although the Board's findings are entitled to respect, they nevertheless must be set aside when the record clearly precludes the Board's decision from being justified by a fair estimate of the testimony of witnesses or its informed judgment on matters within its special competence or both. The Court also made it clear that an examiner's report is as much a part of the record as the complaint or the testimony.

"It is therefore difficult to escape the conclusion that the plain language of the statutes directs a reviewing court to determine the substantiality of evidence on the record including the examiner's report." Id. at 493, 71 S.Ct. at 467.

\* \* \* \* \* \*

"We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. \* \* We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony." Id. at 496, 71 S.Ct. at 469.

■ The probative force that should be given an examiner's decision reaches its highest significance when, as here, the issues involved turn upon credibility. Acme Products, Inc. v. N. L. R. B., 389 F.2d 104, 106 (8th Cir. 1968), and cases there cited; Saginaw Furniture Shops, Inc. v. N. L. R. B., 343 F.2d 515 (7th Cir. 1965); Rocky Mountain Natural Gas Co. v. N. L. R. B., 326 F.2d 949 (10th Cir. 1964).

The crucial question for resolution by the Board was whether Respondent's decision to subcontract its local hauling and terminate three employees was motivated solely by valid economic considerations, as found by the trial examiner,

or by Union animus as found by the Board. Briefly, the evidence relevant to this question reveals the following. Respondent was a small, privately owned corporation. Although no stock was issued, it was shown and the examiner found that William Don Larson, Fred Proctor and Harlan Johnson were equally interested in the trucking operation. Employees Bernard H. Becker and David C. Ellwanger were employed in February, 1966. Harry Jenkins was hired in April. They were to work on local moving and in the warehouse.

These employees became dissatisfied with low wages, long hours and lack of pay for holidays. During the middle of May, 1966, Becker informed Proctor that unless the employees received a salary increase they would go to the Union. According to Becker's testimony, Proctor requested him not to take that course of action, stating that: "[Y]ou know we would rather close our doors than have the Union in there." [1] The examiner observed that the statement attributed to Proctor in middle May "appears to be beyond the averments of the complaint and is in any event an isolated remark not warranting a finding of violation and insufficient for a remedial order * *." On June 3 Becker, Jenkins and Ellwanger contacted Union and signed cards authorizing it to represent them for bargaining purposes. On June 6 they paid initiation fees to the Union. The afternoon of that day the Union sent a letter to Respondent demanding recognition. Photostatic copies of the three authorization cards were enclosed with the letter.

On the evening of June 7, Proctor met with employees Becker and Jenkins at a local restaurant. During that meeting Proctor informed Becker and Jenkins that Respondent was losing money on the local moving operation and that it was going to discontinue that phase of its business. On that occasion Becker stated Proctor knew that Excelsior had received notice from the Union. Becker recalled that Proctor did not reply to this suggestion. Jenkins offered a different version. According to Jenkins' equivocal testimony, Becker informed Proctor the men were going to the Union, that Proctor replied he knew about it. The examiner discredited Jenkins' testimony stating:

"Jenkins was led by General Counsel during most of his testimony, including that pertaining to this incident. Moreover, Jenkins' version of Proctor's remarks on June 7 does not appear responsive to the occasion but seems instead to corroborate Becker's account of the mid-May breakfast conversation. Accordingly, I do not find that on June 7 Proctor acknowledged that Excelsior had by then received the Union's demand for recognition."

Additionally, the uncontradicted testimony of Johnson shows that the Union's demand for recognition (mailed June 6) was not received until June 8 or June 9, and not opened by Larson, the addressee, until June 10.[2]

1. Proctor had severed all connections with Respondent prior to the hearing before the examiner. He was not present at the hearing and counsel for Respondent informed the examiner that he had made an unsuccessful effort to locate Proctor.

2. The examiner, in discussing the question whether the contracting out of the local hauling was impelled by the employee's Union adherence or was motivated by economic considerations stated that in order to find for the General Counsel on this issue he would be required to pile inference on inference. More precisely, the examiner stated:

"First it would be necessary to infer that Excelsior received the Union's demand for recognition on June 7. While the Union's office girl credibly testified she had placed the envelope with the demand in the mail at about 2 p.m. on June 6, no evidence was offered as to when, in the normal course of events, the Union's letter would have been received by the Respondent in Excelsior, Minnesota. It would then be necessary to infer, based on an inference that the letter was received on June 7, that Excelsior then contacted Warren Austin and made the agreement to subcontract to him the unit's work, all in time to announce this to the employees that

The record also reveals and the examiner found that Johnson and Larson credibly testified that early in May they had received their auditor's profit and loss statement covering the four-month period of January through April. This statement showed that Respondent's local operation was a losing financial venture; that 75 per cent of each dollar derived from local moving was being paid out for labor as against an industry expectation of 45 per cent. Although the auditor's report was not introduced into evidence the examiner credited the unrebutted testimony of Larson and Johnson relating to the local operations.

The examiner concluded that the § 8 (a) (1), (3) and (5) violations turned on whether the contracting out of the local hauling work was impelled by the employees' Union adherence and Union's demand for recognition. The examiner stated:

"To find that Excelsior was so motivated I must discredit the uncontradicted evidence that Respondent was faced with a losing operation in its local hauling business. In addition, to reach this result I must discredit the equally unrebutted evidence that the arrangement for Warren Austin to take over the unit work was settled on May 30, days before the employees first contacted the Union. In this connection I note that General Counsel had during his investigation of this case taken an affidavit from Austin but failed to call Austin to testify to rebut Respondent's recital of the circumstances of the contract to subcontract."

Further discussion of the examiner's findings is not required. In our view he carefully and logically analyzed all aspects of the evidence. His decision succinctly demontrates that resolution of

the overall question depended in large measure upon the weight and value to be given the testimony of witnesses. He concluded that the General Counsel had failed to sustain the burden of proving the alleged unfair labor practices.

■ We have accorded due consideration to the Board's decision. We, of course, are mindful that it is our function to review the Board's findings and determine whether on the record as a whole its findings, and not those of the trial examiner, are supported by substantial evidence. Obviously, the Board indulged in every favorable inference necessary to sustain its decision and order. Certainly it is within the competence of the Board to draw reasonable inferences. But a fair estimate of the record leaves us with the firm impression that the Board completely failed to accord any consideration to undisputed evidence favorable to Respondent. As an example, the examiner, with propriety, credited the unrebutted testimony of Johnson and Larson that was directed to the crucial question of whether Respondent discontinued its local operation solely for economical reasons. The Board was "not persuaded by Respondent's self-serving testimony as to the contents of the auditor's report." On the other hand, the Board attached significance to the self-serving testimony of employee Becker that Respondent had advertised in Minnesota newspapers for employees. We recognize, of course, that the auditor's report was the best evidence but so were the newspaper ads. Neither was introduced. In any event, the examiner saw fit to believe Johnson and Larson, who testified without objection to the pertinent portions of the auditor's report. This demonstrates that the Board accorded slight, if any, regard for the examiner's findings based upon

very evening and to implement the arrangement the following day. Having found nothing in the record or the demeanor of the witnesses to discredit the unrebutted evidence that the decision to subcontract the local hauling work and terminate the employees

was motivated solely by valid economic considerations and undertaken prior to the advent of the Union, I shall recommend dismissal of the allegations that Excelsior violated Section 8(a) (3) and (5) of the Act."

his evaluation of the witnesses and the weight given their testimony.

After responsibly considering the record in its entirety we are satisfied that the Board's findings are not supported by substantial evidence.

Enforcement of the Board's order is denied.