**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HART BEVERAGE CO., Inc., d/b/a Pepsi-Cola Bottling Co., Respondent.**

**No. 19453.**

United States Court of Appeals Eighth Circuit.

Aug. 29, 1969.

William H. Carder, Atty., N.L.R.B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, N.L.R.B., Dominick L. Manoli, Assoc. Gen. Counsel, N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., and Frank H. Itkin, Atty., N.L.R.B., on the brief.

John E. Tate, of Nelson, Harding, Richling, Leonard & Tate, Lincoln, Neb., for respondent.

Before VAN OOSTERHOUT, Chief Judge, GIBSON, Circuit Judge and MILLER, Senior District Judge.

VAN OOSTERHOUT, Chief Judge.

This case is before this court on the application of the National Labor Relations Board pursuant to § 10(e) of the National Labor Relations Act as amended (29 U.S.C.A. § 151 et seq.) for enforcement of its order issued against respondent Hart Beverage Co., Inc., d/b/a Pepsi-Cola Bottling Co., on March 18, 1968. The Board's decision and order are reported at 170 N.L.R.B. No. 58. Jurisdiction is established.

The Company is engaged in bottling and distributing soft drinks in Sioux City, Iowa. The Union (General Drivers, Warehousemen and Helpers Union Local 383, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America) commenced a campaign to organize and represent the Company employees early in 1967. As found by the Board, the Union had by April 10, 1967, obtained unambiguous representation authorization cards from twenty of the Company's twenty-three employees in an appropriate unit. Union letters of April 10 and 13, 1967, addressed to the Company demanding recognition and bargaining and enclosing authorization cards were returned to the Union unopened. Claim of majority representation was made by the Union by telegram received by the Company on April 14, 1967, to which the Company responded on the same date as follows:

"Regarding your telegram of today please be advised that regardless of your demand for bargaining we have a good faith doubt that you truly represent the majority of our employees. In 1965 you claimed to represent our employees but a secret ballot election determined that you did not represent our employees. Therefore, we again believe that the proper method to resolve this matter is through another secret ballot election."

On April 18, 1967, the Company filed with the Board a petition requesting an election to settle the representation issue. The Union filed the unfair labor practice charge here involved on April 19, 1967. No election was held.

The Board in agreement with its Trial Examiner determined that the Company

did not have a good faith doubt as to the Union's majority status when it refused to bargain and upon that basis found a violation of § 8(a) (5) and (1) of the Act and ordered the Company to bargain with the Union upon request. A very doubtful question is presented on the sufficiency of the evidence to support the Board's determination of bad faith. For the reasons hereinafter stated we deem it unnecessary to determine such issue.

This case was heard by the Board and argued and submitted to us prior to the June 16, 1969, decision of the Supreme Court in National Labor Relations Board v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547, which we consider to be controlling. It is noteworthy that the Board on oral argument in that case abandoned the good faith doubt standard announced in Joy Silk Mills, Inc. v. National Labor Relations Board, 85 N.L.R.B. 1263, enforced 87 U.S.App.D.C. 360, 185 F.2d 732, as modified by Aaron Brothers, 158 N.L.R.B. 1077.

The Supreme Court in Gissel accepts the Board's newly announced standard and states:

"Although the Board's brief before this Court generally followed the approach set out in Aaron Brothers, supra, the Board announced at oral argument that it had virtually abandoned the Joy Silk doctrine altogether. Under the Board's current practice, an employer's good faith doubt is largely irrelevant, and the key to the issuance of a bargaining order is the commission of serious unfair labor practices that interfere with the election processes and tend to preclude the holding of a fair election. Thus, an employer can insist that a union go to an election, regardless of his subjective motivation, so long as he is not guilty of misconduct; he need give no affirmative reasons for rejecting a recognition request, and he can demand an election with a simple 'no comment' to the union. * * * "
395 U.S. 575, 594, 89 S.Ct. 1918, 1929.

Much that is said in Gissel is pertinent to our present case. Since the opinion in that case is readily available, extensive quotations therefrom would serve little purpose. Because of the new standards adopted by the Board and the lack of specific findings upon the basis of such standards, two of the cases covered by the Gissel opinion were remanded to the Board for further proceedings in conformity with the views expressed in Gissel.

The Board in its letter to the Court, prompted by Gissel, states in part:

"In Gissel, the Supreme Court affirmed generally the use of authorization cards as a basis for establishing a union's majority status and the Board's power to issue a bargaining order based upon such showing where the employer's unfair labor practices had a tendency to undermine the union's majority status and impede the statutory election process. Although the Court noted in Gissel that the requisite findings were implicit in the Board's decision, it remanded the case to the Board to determine whether the employer's unfair labor practices were of such a character as to undermine the union's majority status and impede a fair election and therefore the bargaining order was an appropriate remedy for such unfair labor practices.

"We believe that the instant case which has been argued may be subject to the same infirmity as that which prompted the Supreme Court to remand Gissel to the Board for further findings. We suggest that two possible procedures may be appropriate in the instant case: (1) Remand the entire case at this time or (2) Review the Board's findings as to the alleged violations of Section 8(a) (1) or 8(a) (3), or both and if the Court agrees with the Board's findings with respect to these violations, remand the case to the Board to consider its remedial bargaining order in light of the Gissel decision. The Board believes that the second procedure de-

scribed above might prove to be the more expeditious way for both the Court and the Board."

Counsel for the Company by a letter of July 9, 1969, to this Court states:

"However, if the Assistant General Counsel of the National Labor Relations Board was indicating in his July 1, 1969 letter that the *Gissel* case has caused the Board to see the error in its previous decision, which error will be remedied upon remands to the Board, it may be correct that either of the two possible remand procedures that he suggests might be more 'expeditious.' Since the remand to the Board might result in the same decision as was previously rendered, the Respondent, while not necessarily opposing the remand to the Board, notes that it might be more expeditious for this Court to procede to a determination of the issues in this case."

It is our considered view that the entire case should be remanded to the Board in conformity with the Board's suggestion numbered (1). A very close question is presented on the sufficiency of the evidence to support the § 8(a) (1) violations. The difficulty is increased, as pointed out in the Company's brief, by the Trial Examiner's statement in several instances that the Company did not deny statements made by the Board's witnesses. The record shows denial of such statements. In any event, it will be necessary for the Board to re-evaluate the evidence on the § 8(a) (1) violations to determine whether the evidence goes to the extent of showing that the asserted violations tended to preclude a fair election.

Upon the record as a whole, a serious question is presented on whether an evidentiary basis exists for a finding that any acts with which the Company and its representatives are charged had a coercive effect upon the employees. There is also the additional factor in this case that the Company promptly requested an election upon being advised of the Union's bargaining demands.

The Court in *Gissel* admonishes that it is at least initially up to the Board and not to the courts to determine the effects of asserted and established unfair labor practices upon the election process.

This case is remanded to the Board for further consideration upon all issues in light of the Supreme Court's opinion in *Gissel*.