**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**REGAL ALUMINUM, INC., Respondent.**

No. 20216.

United States Court of Appeals, Eighth Circuit.

Jan. 4, 1971.

Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Abigail Cooley Baskir, Harold B. Zanoff, Attys., N. L. R. B., for petitioner.

Robert F. Redmond, III, Kansas City, Mo., Terrell, Van Osdol & Magruder, Kansas City, Mo., of counsel, for respondent.

Before MEHAFFY, GIBSON and LAY, Circuit Judges.

LAY, Circuit Judge.

The Board seeks enforcement of a bargaining order arising from findings of unfair labor practices under §§ 8(a)

(1) and 8(a) (5) and (1) of the National Labor Relations Act. After the original application for enforcement was filed in this court, the case was remanded at the Board's request for reconsideration of its order in light of NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S. Ct. 1918, 23 L.Ed.2d 547, decided on June 16, 1969. The parties presented their representative views as to the application of *Gissel* to the present proceeding. In a supplemental order the Board found that the company's unfair practices in violation of § 8(a) (1) of the National Labor Relations Act effectively undermined the union's majority status and that a fair election being doubtful, a bargaining order was the proper remedy. Finding substantial evidence to support the Board's findings, we enforce the order.

On June 21, 1967, the Union, District Lodge 71 of the International Association of Machinists and Aerospace Workers, AFL–CIO (hereinafter called IAM), sent a certified letter to Ben Richardson, president of Regal Aluminum in Kansas City, Missouri, and demanded recognition as the bargaining agent for a unit of the production and maintenance employees. It is undisputed that at the time of its demand IAM had been designated as a bargaining representative, 12 of the 20 employees having signed authorization cards. The demand letter was admittedly received but was returned unopened by Richardson. On June 23, the date the first letter was returned, a second request was made, again by certified mail. This was likewise returned by the Post Office with the notation that the addressee had refused delivery. Thereafter the union sought a representation election. A consent election was held on July 27, which the union lost 10 to 6. Four ballots were challenged.

■ The NLRB set aside the election on the ground that the company's unfair labor practices had undermined the union's majority status. The Board found that during the anti-union campaign preceding the election the company had coercively interrogated and polled the employees concerning union activities; that the company had created the impression of surveillance of union meetings; that it had promised and granted hospital insurance benefits, a better Christmas bonus and other benefits in order to persuade employees to vote against the union. We find substantial evidence to support these findings and direct ourselves to the challenge made to the remedial bargaining order fashioned by the Board.

■ Three basic misconceptions surround the company's contention relating to the § 8(a) (5) violation. First, the company urges that it had no knowledge of the bargaining demand of IAM claiming to represent the majority of the employees. The basis of this assertion is that the company returned unopened the demand letters of the union. We find this argument to be specious. The surrounding facts and circumstances strongly suggest that the company president was fully aware that IAM was prepared to make a demand to bargain as the employees' representative. Prior to refusing the letter Richardson was well aware of the distribution of the cards and had previously discussed a collective bargaining relationship with union officials. Moreover, the company cannot hide behind its own self-constructed wall of obstinance and thereby use its ignorance as a shield. The National Labor Relations Act only contemplates that the union make a demand to be recognized. The duty created is to use reasonable means to make the demand known to the company. Under a statute requiring cooperative attitudes to achieve industrial peace, common sense dictates that artificial devices created by the company to avoid knowledge of that demand cannot succeed. Upon its refusal to accept the union's letters the company acted at its own peril as to the contents of the letters. As Mr. Justice Clifford early observed:

"[I]t is well-settled law that a party to a transaction, where his rights are liable to be injuriously affected by no-

tice, cannot wilfully shut his eyes to the means of knowledge which he knows are at hand, and thereby escape the consequences which would flow from the notice if it had actually been received. * * * " The Lulu, 10 Wall. 192, 201, 77 U.S. 192, 201, 19 L. Ed. 906 (1869).

See also NLRB v. Local 3, Bloomingdale, District 65, Retail, Wholesale & Department Store Union, CIO, 216 F.2d 285, 288 (2 Cir. 1954); cf. NLRB v. Columbian Enameling & Stamping Co., 306 U. S. 292, 297, 59 S.Ct. 501, 83 L.Ed. 660 (1939).

 *Second, the company urges that* at all times it maintained a good faith doubt as to the union's card majority. However, this argument overlooks the supplemental decision of the Board upon remand after *Gissel*. As the Board acknowledged before the Supreme Court in the *Gissel* argument, an employer may request an election without the necessity of proving good faith doubt.[1]

As the *Gissel* decision relates:

"[T]he key to the issuance of a bargaining order is the commission of serious unfair labor practices that interfere with the election processes and tend to preclude the holding of a fair election. Thus, an employer can insist that a union go to an election, *regardless of his subjective motivation, so long as he is not guilty of misconduct;* he need give no affirmative reasons for rejecting a recognition request,

and he can demand an election with a simple 'no comment' to the union." 395 U.S. at 594, 89 S.Ct. at 1930 (Emphasis ours.)

Thus, a "good faith doubt" becomes largely irrelevant" under *Gissel*. Rather, the § 8(a) (5) violation in the Board's supplemental decision rests on findings of unfair labor practices which effectively undermined the union's majority status.

Third, the company urges that assuming the existence of unfair practices its conduct nevertheless was not so "outrageous or aggravated" as to justify an 8(a) (5) bargaining order. The company relies upon this court's decision in NLRB v. Crystal Tire Co., 410 F.2d 916 (8 Cir.1969), and NLRB v. Arkansas Grain Corp., 390 F.2d 824 (8 Cir.1968). Both of these cases preceded *Gissel*.[2] The *Gissel* decision expressly authorizes a bargaining order even where the unfair practices are not outrageous or aggravated if the Board determines that it is still necessary to counteract the prejudice created. The Supreme Court observed that a bargaining order may issue where the employer's unfair labor practices, although not "pervasive" enough to justify a bargaining order in the absence of a card majority, nevertheless serve to adversely affect an election process. Furthermore, the Supreme Court premises the bargaining order on the Board's finding that "the possibility of erasing the effects of past practices and of ensuring a fair election (or a

---

I. The necessity of a good faith doubt to the union's card majority as a defense to a refusal to bargain was known as the Joy Silk Doctrine. Joy Silk Mills, Inc. v. NLRB, 85 N.L.R.B. No. 211 (1949), enforced as modified 87 U.S.App.D.C. 360, 185 F.2d 732 (1950), cert. denied 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350 (1951). For post-*Gissel* applications of the Board's current practice see Amalgamated Clothing Workers of America v. NLRB, 137 U.S.App.D.C. 330, 424 F.2d 818, 825 (1970); Textile Workers Union of America, AFL-CIO v. NLRB, 137 U.S.App.D.C. 67, 420 F.2d 635, 636 (1969); NLRB v. Hart Beverage Co., 414 F.2d 618, 620 (8 Cir. 1969);

NLRB v. American Cable Systems, Inc., 414 F.2d 661, 667 (5 Cir. 1969); International Ladies' Garment Workers v. NLRB, 134 U.S.App.D.C. 318, 414 F.2d 1214, 1216 (1969), cert. denied Garland Knitting Mills of Beaufort, S. C. v. N.L.R.B., 398 U.S. 951, 90 S.Ct. 1870, 26 L.Ed.2d 292 (1970).

2. *Crystal Tire* was reconsidered on a motion for rehearing in light of *Gissel*. A rehearing was denied July 27, 1969, and the bargaining order again rejected. However, the Court in *Crystal Tire* specifically found that the evidence did not support a finding that the employer's interference destroyed the union's claimed majority status. 410 F.2d at 920.

fair rerun) by the use of traditional remedies, though present, is slight and that employee sentiment once expressed through cards would, on balance, be better protected by a bargaining order. * * *" 395 U.S. at 614–615, 89 S. Ct. at 1940.

In delineating the proper scope of a bargaining order, the Supreme Court emphasized the role of the Board in fashioning its remedy:

"The employers argue that the Fourth Circuit correctly observed that, 'in the great majority of cases, a cease and desist order with the posting of appropriate notices will eliminate any undue influences upon employees voting in the security of anonymity.' * * * It is for the Board and not the courts, however, to make that determination, based on its expert estimate as to the effects on the election process of unfair labor practices of varying intensity. In fashioning its remedies under the broad provision of § 10(c) of the Act (29 U.S.C. § 160(c) (1964 ed.)), the Board draws on a fund of knowledge and expertise all its own, and its choice of remedy must therefore be given special respect by reviewing courts. * * * '[I]t is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.'" 395 U.S. at 612, n. 32, 89 S.Ct. at 1939.

 Gissel does not mean that the Board may require a bargaining order in every unfair practice case or that a court of appeals may not review an order where abuse of discretion is alleged. Where there exists little or no opportunity for the unfair practice charge to have a pervasive adverse influence upon the employees' sentiment in an election the Board should still revert to the traditional means of democratic ballot. See Fremont Newspapers, Inc. v. NLRB, 436 F.2d 665 (8 Cir.1970). Cf. Clark's Gamble Corp. v. NLRB, 422 F.2d 845 (6 Cir. 1970), cert. denied 400 U.S. 868, 91 S.Ct. 100, 27 L.Ed.2d 108 (1970); NLRB v.

American Cable Systems, Inc., 427 F.2d 446 (5 Cir.1970).

Under the present facts we find substantial evidence from which the Board could reasonably determine that the employer's conduct was pervasive and effectively interfered with the union's majority status. We find it was within the reasonable exercise of the Board's discretion to issue a bargaining order.

The Board's order in its supplemental decision of October 29, 1969, is enforced.