**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**HART BEVERAGE CO., Respondent.**

**No. 19453.**

United States Court of Appeals,
Eighth Circuit.

June 30, 1971.

**416**

Michael S. Winer, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Assistant Gen. Counsel, Frank H. Itkin, Attys., N. L. R. B., for petitioner.

William A. Harding, Nelson, Harding, Marchetti, Leonard & Tate, John E. Tate, Lincoln, Neb., for respondent.

Before MATTHES, Chief Judge, GIBSON, Circuit Judge, and HENLEY, District Judge.*

* Chief Judge, United States District Court, Eastern District of Arkansas, sitting by designation.

HENLEY, Chief District Judge.

This is a proceeding brought by the National Labor Relations Board under section 10(e) of the National Labor Relations Act, 29 U.S.C.A, § 160(e), to secure enforcement of an order of the Board. The order in question commands Respondent, Hart Beverage Co. of Sioux City, Iowa, to cease and desist from certain alleged unfair labor practices alleged to have been committed in violation of section 8(a) (1) of the Act, to post a notice of its compliance with the order, and to bargain collectively with General Drivers, Warehousemen and Helpers Union, Local 383, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, as the bargaining agent for some twenty-three employees belonging to an appropriate bargaining unit, as required by section 8(a) (5) of the Act.[1] Respondent resists enforcement. In their briefs and in argument counsel on both sides have limited their attention to that portion of the order which requires Respondent to bargain collectively with the Union that has been mentioned; counsel have not seen fit to discuss the "cease and desist" aspect of the order as such. It is clear, however, that the Board wants to have the order enforced in its entirety, and that Respondent does not want to have any of it enforced.

The history of the controversy goes back to 1965 when the Union lost a representation election conducted under section 9(c) of the Act among plant employees of Respondent. In 1967 certain employees of Respondent approached the Union's Local President and Business Agent with the end in view of undertaking to organize Respondent's plant again. The Business Agent advised the employees that the Union was not interested in undertaking to represent Respondent's employees if in order to do so

it would be necessary to go through another section 9(c) election, and it was decided that the Union would accept authorization cards from employees and would seek recognition on the basis of those cards.

By April 11, 1967, the Union had been able to obtain unambiguous authorization cards from twenty of the twenty-three employees in the bargaining unit and demanded recognition. On April 14 Respondent advised the Union that it entertained a "good faith doubt" as to the Union's representation of a majority of the employees and would not recognize or bargain with the Union in advance of a plant election called under section 9(c) of the Act. On April 18 Respondent filed with the Board a petition for an election. The actions of Respondent were in line with the doctrine announced in Joy Silk Mills, Inc. v. N. L. R. B., 85 N.L.R.B. No. 211 (1949), enforced as modified, 87 U.S.App.D.C. 360, 185 F.2d 732. That doctrine was to the effect that an employer confronted with a union demand for recognition on the basis of authorization cards could obtain a section 9(c) election only if he entertained a "good faith doubt" as to the majority position of the Union.

On the same day on which Respondent filed its petition for an election the employees took a strike vote and with practical unanimity voted to strike. On April 19 the Union filed an unfair labor practices charge against Respondent, which action effectively thwarted the holding of the election requested by Respondent until the Board could determine the unfair practices charge.

On April 25 Respondent posted a notice to its employees advising them that it had requested an election and purporting to advise them of certain of their rights under the Act.

---

1. Insofar as here pertinent, section 8(a) of the Act, 29 U.S.C.A., § 158(a), provides that it shall be an unfair labor practice for an employer: "(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 of this Act; * * * (5) to refuse to bargain collectively with the representative of his employees, subject to the provisions of section 9 of this Act; * * *."

On May 4 the unfair practices charge was amended, and on July 31 a hearing on the charge was held before a Trial Examiner of the Board. In the course of the hearing the Examiner took the testimony of the Union's Business Agent, Mr. Santi, seven employees or former employees of Respondent, and the President, Vice-President, and Production Manager of Respondent. The Examiner also considered certain documentary evidence.[2]

On December 7, 1967, the Examiner issued his decision and his recommended order, which decision and order were approved and adopted by a panel of the Board on March 18, 1968.

Viewing the case in the light of *Joy Silk*, supra, the Examiner defined the "main issue" before him as being "whether Respondent acted in good faith in refusing to recognize and bargain with the Union; specifically, whether Respondent's refusal was motivated by a good faith doubt, or by a rejection of the collective bargaining principle or a desire to gain time within which to undermine the Union.

It is clear from the 1967 opinion of the Examiner and from his later opinion in the case, which will be mentioned in due course, that he accepted the testimony of General Counsel's witnesses, several of whom he describes as credible and trustworthy, and did not accept the testimony of Respondent's managerial personnel, although he did not in terms stigmatize Respondent's witnesses as being untrustworthy or not credible.[3]

The Examiner found that the claim of Respondent that it had a good faith doubt that the Union represented a majority of the employees had not been sustained, that Respondent had acted in bad faith in refusing to recognize and bargain with the Union, and that its refusal constituted a violation of section 8(a) (5) and (1) of the Act. The Examiner also found that Respondent had violated section 8(a) (1) in a number of ways apart from its refusal to recognize the Union. It was found that Respondent had coercively interrogated employees about union affiliation and activity, that it had advocated the formation of a company union, that it made implied promises of benefits to the employees if they would abandon the Union, and had unlawfully threatened and coerced the striking employees by telling them that the strike was illegal, that the company would not negotiate with the Union, and that the strikers were being replaced and had no jobs.

As stated, the Board adopted the Examiner's decision and recommended order on March 18, 1968, and it instituted this enforcement proceeding in October of that year. The case was briefed, orally argued, and submitted to a panel of this Court consisting of then Chief Judge Van Oosterhout, Circuit Judge Gibson, and Senior District Judge Miller sitting by designation.

Before the panel just mentioned could render its decision, the Supreme Court decided N. L. R. B. v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L. Ed.2d 547 (1969).[4] In view of *Gissel's* impact on *Joy Silk* the Board requested this Court to remand the case either in whole or in part for administrative reconsideration. The Court in compliance with that request remanded the entire case. N. L. R. B. v. Hart Beverage Co.,

2. From the remarks of the Examiner and of counsel made at the conclusion of the hearing it appears that the parties had tried to settle their differences by means of a consent election but had been unable to do so. No election has been held since the inception of the 1967 controversy.

3. In the course of his opinion the Examiner stated that some of the testimony produced by General Counsel was not denied. That categorical statement was

inaccurate and was not justified by the record fairly read. It was to cause trouble to this Court and to the Examiner as will appear later.

4. This Court has considered *Gissel* in some detail in Arbie Mineral Feed Co. v. N.L. R.B., 8 Cir., 438 F.2d 940 (1971) and in other cases cited in the opinion in *Arbie*. We see no occasion to repeat in this case the analyses that we have made in those cases.

8 Cir., 414 F.2d 618 (1969). In connection with the remand we said (414 F.2d at 621):

> "It is our considered view that the entire case should be remanded to the Board in conformity with the Board's suggestion numbered (1). A very close question is presented on the sufficiency of the evidence to support the § 8(a) (1) violations. The difficulty is increased, as pointed out in the Company's brief, by the Trial Examiner's statement in several instances that the Company did not deny statements made by the Board's witnesses. The record shows denial of such statements. In any event, it will be necessary for the Board to re-evaluate the evidence on the § 8(a) (1) violations to determine whether the evidence goes to the extent of showing that the asserted violations tended to preclude a free election.

> "Upon the record as a whole, a serious question is presented on whether an evidentiary basis exists for a finding that any acts with which the Company and its representatives are charged had a coercive effect upon the employees. There is also the additional factor in this case that the Company promptly requested an election upon being advised of the Union's bargaining demands.

> "The Court in *Gissel* admonishes that it is at least initially up to the Board and not to the courts to determine the effects of asserted and established unfair labor practices upon the election process.

> "This case is remanded to the Board for further consideration upon all issues in light of the Supreme Court's opinion in *Gissel*."

In February 1970 the Board referred the case back to the same Trial Examiner who had considered it in the first instance, and on May 27, 1970, he issued a supplemental decision and order. On September 29 the Board again approved the Examiner's decision and order; and on December 18, 1970, the Board again asked this Court for enforcement.

In his supplemental decision the Examiner adhered to his original findings and conclusions and added to them an additional finding, in line with *Gissel*, that Respondent's practices found by the Examiner to have existed " 'have the tendency to undermine majority strength and impede the election process', and thus 'the possibility of erasing the effects of (the) past practices and insuring a fair election * * * by the use of traditional remedies * * * is slight and * * * (therefore) employee sentiment once expressed through cards would, on balance, be better protected by a bargaining order * * **' "** [5]

■ At the outset of discussion we recognize that where the Board has permissibly found that an employer has been guilty of an unfair labor practice, the task of fashioning an appropriate remedy is primarily that of the Board, and we will not interfere with the Board's choice of a remedy unless we are convinced that there has been an abuse of agency discretion. N.L.R.B. v. J. H. Rutter-Rex Manufacturing Co., 396 U.S. 258, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969); N. L. R. B. v. Gissel Packing Co., supra, 395 U.S. at 612, n. 32, 89 S. Ct. 1918; N. L. R. B. v. Drapery Manufacturing Co., 8 Cir., 425 F.2d 1026 (1970); Hinson v. N. L. R. B., 8 Cir., 428 F.2d 133 (1970).

■ We recognize also that under the Act we must accept the agency's findings of fact if they are supported by substantial evidence on the record con-

---

5. Much of the Examiner's supplemental decision is an effort to justify the heretofore noted unfortunate statement in his original decision to the effect that some of the testimony of General Counsel's witnesses had not been denied by Respondent's witnesses. We do not stop to evaluate that effort. It seems clear to us that whether Respondent's witnesses denied the testimony of General Counsel's witnesses or not, the Examiner ultimately chose to accept the testimony of the latter.

sidered as a whole, as the term "substantial evidence" is now conventionally understood. See Universal Camera Corporation v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); N. L. R. B. v. A-1 Excelsior Van & Storage Co., 8 Cir., 403 F.2d 959 (1968); Acme Products, Inc. v. N. L. R. B., 8 Cir., 389 F.2d 104 (1968); Dierks Forests, Inc. v. N. L. R. B., 8 Cir., 385 F.2d 48 (1967). However, we are not to abdicate our judicial function and become a mere rubber stamp for administrative action. N. L. R. B. v. Brown, 380 U.S. 278, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965). And we must keep in mind that the "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corporation v. N. L. R. B., supra, 340 U.S. at 488, 71 S.Ct. at 464.

█ We have considered the entire record in this case in the light of the principles that have been stated, and we conclude that the findings of the Examiner and of the Board to the effect that Respondent through its managerial personnel violated sections 8(a) (1) and (5) of the Act are not supported by substantial evidence on the record as a whole. It follows that the Board's petition for enforcement of its order or orders will be denied in its entirety.

To start with, we think it highly doubtful that Respondent's President, Vice-President, and Production Manager made some of the statements attributed to them by the Trial Examiner, or that the language that they used was intended to be understood or was in fact understood as amounting to a manifestation of anti-union bias, or as a campaign for the formation of a company union, or as threats to employees if they adhered to the Union, or as promises of reward if they abandoned the Union.

However, even if we accept at face value the testimony of Respondent's employees, as did the Examiner, we do not feel that a fair minded reasonable fact finder would consider that the state-ments and conduct of Respondent's officers and production manager would have any tendency to coerce, restrain or interfere in any significant way with the employee rights guaranteed by section 7 of the Act, or that those statements and conduct in fact coerced, restrained, or interfered with the employees in the exercise of section 7 rights. Indeed, it is quite clear that if the statements in question were designed by Respondent to defeat the organizational efforts of the Union and the employees, those statements failed miserably to achieve their objective. The employees stood by the Union; they struck; and they were still on strike when the unfair labor practices hearing was held some three months after the strike began.

█ But, even were we of the opinion that violations of the Act were established to an extent that would have justified the issuance of a mere cease and desist order accompanied by the posting of an appropriate notice, we would still not be persuaded that they were sufficiently serious to justify the Board in issuing a bargaining order as a substitute for a secret election, particularly in view of the fact that when confronted with the Union's demand for recognition Respondent moved for an election. In this connection we do not overlook the fact that when the 1967 organizational effort was initiated the attitude of the Union was that if it had to go through an election similar to that held in 1965, it would prefer to forego the representation of the employees; and it appears clearly inferable to us that one of the purposes of the Union in filing the unfair practices charge was to abort Respondent's petition for an election, if, indeed, that was not its only purpose.

The Supreme Court has made clear in *Gissel*, and this Court has made clear in *Arbie*, that not every unfair labor practice justifies the Board in issuing a bargaining order. In *Arbie* we said (p. 945 of 438 F.2d):

"Upon analysis, it appears that we have applied these guidelines of evalu-

ation of evidence of our post-*Gissel* cases in determining whether or not to enforce the Board's bargaining order as a remedy for independent unfair labor practices:

"(1) Where the underlying facts affirmatively show that the unfair labor practices have in fact undermined a union majority, typically evidenced by the union losing an election or the employees seeking to withdraw from the union following the occurrence of the conduct in question, we grant enforcement;

"(2) Where the record is silent concerning the actual impact of the employer's unfair labor practices, we defer to the Board's exercise of discretion and grant enforcement; and

"(3) Where the evidence establishes that the unfair labor practices produced little or no impact upon the employees' allegiance to the union, we deny enforcement.

"The present case falls within the above third category of post-*Gissel* cases, since the evidence affirmatively showed that the company's unfair labor practices did not pollute the election atmosphere. See N. L. R. B. v. American Cable Systems, Inc., 427 F. 2d 446, 448 (5th Cir.), cert. denied, 400 U.S. 957, 91 S.Ct. 356, 27 L.Ed.2d 266 (1970). Here, the organization drive proceeded at an accelerated pace following the employer's commission of prohibited practices. In summary, we think the Board abused its prerogatives in this case by issuing a bargaining order and aborting an election."

Assuming arguendo, and contrary to our view, that substantial evidence of record establishes violations of the Act, they were minimal at most so that they would fall within the third category of cases mentioned in *Arbie* and as far as remedy is concerned would be governed by the final paragraph of the foregoing quotation from *Arbie*.

Enforcement denied.