**DAWSON METAL PRODUCTS, INC.,**
**Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 20352.**

United States Court of Appeals, Eighth Circuit.

Nov. 3, 1971.

Marvin J. Martin, W. Stanley Churchill, Martin, Cooper, Churchill & Friedel, Wichita, Kan., for petitioner.

Marvin Roth, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Eugene B. Granof, Atty., N.L.R.B., Washington, D. C., for respondent.

Before MEHAFFY and HEANEY, Circuit Judges, and MEREDITH, District Judge.

MEREDITH, District Judge.

This case is before the Court upon a petition to review an order of the National Labor Relations Board, issued against Dawson Metal Products, Inc. The Board has cross-applied for enforcement of its order.

The decision and order, dated June 10, 1970, found that the company violated

section 8(a) (1) of the Act by unlawful interrogation, promises of benefits, threats, and telling an employee that the company would not hire individuals with union backgrounds. It further found a violation of section 8(a) (5) of the Act by refusal of the company to bargain with the union on and after August 27, 1968, since the union represented a majority of the employees. The Board found that the unfair labor practices would make a fair election doubtful, if not impossible, and ordered the company to bargain.

The company had its parent plant located in Wichita, Kansas, and a small plant in Camdenton, Missouri. The Camdenton plant was opened in July 1967. In August 1968 the Wichita plant was closed and all production, manufacturing, and office facilities were moved to Camdenton.

Before the consolidation, the Camdenton plant had between fifteen and twenty-two employees. By January 1969, at the time of the hearing, there were between sixty and seventy employees. The election involved twenty-eight employees at Camdenton, and the vote was thirteen for the union and fifteen against the union. The Board found that by August 27, 1968, union cards were signed by fourteen employees out of either twenty-two or twenty-five in the bargaining unit.[1]

The organization drive was started about August 1, 1968, by Donald Danuser, an employee. He obtained union cards and by August 24, 1968, had fourteen signatures on the cards. The employees met with Eugene F. Eyink, a business representative from Local 1316, International Association of Machinsts and Aerospace Workers, AFL–CIO, on August 24, 1968.

On August 26, 1968, the union sent a letter requesting recognition and bargaining. This letter was received on August 27, 1968. On August 30, 1968, the company responded to the union, stating it doubted the union's claim and advised a petition for election had been filed. The petition was filed on September 3, 1968, and an election was held on September 25, 1968.

The union filed many charges of which only a few were sustained by the trial examiner and the Board.

The charges sustained included conduct by foreman, LeRoy Rogers, threatening employee, Albert Anderson, to stay away from Donald Danuser and Albert Jones, two strong union advocates; and plant superintendent, Ralph Paulie, telling Anderson that he had a good chance to get into the tool and die department, if the union did not get in, since the union would operate on a seniority basis.

The examiner and the Board found that foreman Rogers interrogated employees Jackson, White, McAllister, and Neftzger in a coercive manner while at work about their attitudes toward the union; that company personnel manager, Jack Kuhlmann, made statements to his secretary that he would not hire certain new employees because their references were employees with the union.[2]

The examiner also found that employee Danuser had conversations with certain of the supervisors which appeared to be efforts to set up the supervisors for unfair labor practice charges.

With the foregoing factual background, there are presented two principal questions for determination by this Court:

(1) Is the finding of the Board supported by substantial evidence, and

(2) Is the remedy of bargaining which was ordered by the Board an appropriate remedy?

---

1. Three employees had been transferred from Wichita to Camdenton and the exact date of their reporting was not shown on the record.

2. The record shows, however, that these statements were not communicated to anyone else until after the election and the secretary had been fired. The secretary was not a part of the bargaining unit.

This case was decided by the trial examiner before N. L. R. B. v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), and the opinion of the Board came after *Gissel.*

■ A careful examination of the record shows that foreman Rogers was a native of Camdenton, as were most of the employees; that unions were a new experience in that Ozark village. It would be a natural happening for the employees to discuss the oncoming union election with Rogers. The conversations he had with the employees mentioned were not coercive, threatening, or intimidating. In view of the fact that the examiner dismissed the charges originally lodged against president Dawson, as well as other charges against Rogers and supervisor Perkins, the charges which the Board found to be prohibitive rest this case on a thin reed and not substantial evidence. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Acme Products, Inc. v. N. L. R. B., 389 F.2d 104 (8th Cir. 1968); Dierks Forests, Inc. v. N. L. R. B., 385 F.2d 48 (8th Cir. 1967); and N. L. R. B. v. Hart Beverage Co., 445 F.2d 415 (8th Cir. 1971).

The record shows that, at best, only one employee changed his mind between the time the union had fourteen cards signed and the election. The vote was thirteen for the union and fifteen against, therefore, the impact of the unfair practices was slight. The record shows some testimony that would indicate that signing a card was explained by the union representative to the employees as requiring an election at which the employees would be free to vote as they pleased.

■ Only a part of the employees testified at the hearing that they signed the cards and understood them. The additional testimony was by Danuser that those employees not called as witnesses did sign and read the cards. Under these circumstances, even if the findings were supported by the evidence, the Board's order to require bargaining is too drastic a remedy. Arbie Mineral Feed Co. v. N. L. R. B., 438 F.2d 940 (8th Cir. 1971). Accordingly,

Enforcement is denied.

HEANEY, Circuit Judge (dissenting).

I dissent. In my view, the findings of the National Labor Relations Board are supported by substantial evidence on the record as a whole. I also feel that a bargaining order was well within its discretion to order.