654 F.2d 515
 107 L.R.R.M. (BNA) 3155, 91 Lab.Cas. P 12,895
 PATSY BEE, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
Northwestern District Council of the International Ladies'
Garment Workers' Union, AFL-CIO, Intervenor-Respondent.
 No. 80-1485.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 9, 1981.
Decided July 22, 1981.
 
 Roan & Grossman, Clifton L. Elliott, Gina Kaiser (argued), Kansas City, Mo., for petitioner.
 Max Zimny, Gen. Counsel, New York City, Richard B. Thompson (argued), Blake & Uhlig, Kansas City, Kan., for intervenor.
 Allison W. Brown, Jr., Miriam Szapiro (argued), Attys., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for Respondent.
 Before ROSS, HENLEY and McMILLIAN, Circuit Judges.
 HENLEY, Circuit Judge.
 
 
 1
 Patsy Bee, Inc. (the Company) petitions for review of an order of the National Labor Relations Board directing Patsy Bee to bargain with the Northwestern District Council of the International Ladies' Garment Workers' Union, AFL-CIO (the Union). The NLRB cross-appeals seeking enforcement of its order. We conclude that there is not substantial evidence in the record to support the order to bargain and deny its enforcement.
 
 
 2
 This cause arises from an attempt by the Union to organize the employees at the Company's plant. The Union filed a petition with the NLRB on February 23, 1979 seeking a representation election. The election was held on March 27, 1979 with 33 ballots cast for the Union and 38 ballots cast against the Union. On April 2, 1979 the Union filed objections to Company conduct allegedly affecting the outcome of the election.
 
 
 3
 The Administrative Law Judge found that certain Company conduct violated § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1). In particular, (1) Company supervisors questioned employees about their involvement in Union activity; (2) supervisors made statements implying loss of employment or denial of benefits for participation in Union organizing efforts; (3) surveillance of organizing activities was conducted; and (4) a broad rule against distribution of Union literature was implemented. The ALJ also found that certain statements by Company president Bachofer were protected speech under § 8(c) of the Act and did not violate § 8(a)(1).
 
 
 4
 To remedy the unfair labor practices, the ALJ recommended that Patsy Bee be required to cease and desist therefrom and take certain affirmative action. He concluded, however, that a bargaining order was not warranted in the circumstances, since the evidence had not shown that a second secret ballot could not fairly be held.
 
 
 5
 The Board adopted in part the ALJ's findings, but held that (1) the statements by president Bachofer were not protected speech and (2) Patsy Bee must be ordered to bargain with the Union. On appeal, Patsy Bee challenges only these two aspects of the Board's order.
 
 
 6
 The statements of president Bachofer in question here may be summarized briefly:
 
 
 7
 (1) January 3, 1979: Bachofer told employee Donna Flood that Patsy Bee customers would withdraw their contracts if Patsy Bee workers unionized;
 
 
 8
 (2) January 9, 1979: Bachofer told employee Pam Burgess that Jantzen and Artex, the two principal purchasers of Patsy Bee textiles, would pull their contracts if the plant went union;
 
 
 9
 (3) February 21, 1979: Bachofer told employee Jeany Smith that Artex would "definitely pull out" if the plant were unionized;
 
 
 10
 (4) March 1, 1979: Bachofer told employee Debbie Stotts that given the risk of losing the Jantzen contract the Company could not afford to be unionized.
 
 
 11
 The ALJ found the Bachofer statements were protected under § 8(c) of the Act, 29 U.S.C. § 158(c). That section provides:
 
 
 12
 The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice ... if such expression contains no threat of reprisal or force or promise of benefit.
 
 
 13
 (Emphasis added.)
 
 
 14
 The Supreme Court outlined the extent of the protection afforded to employers by § 8(c) in NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). There the Court said:
 
 
 15
 an employer is free to communicate to his employees any of his general views about unionism or any of his specific views about a particular union, so long as the communications do not contain a "threat of reprisal or force or promise of benefit." He may even make a prediction as to the precise effects he believes unionization will have on his company. In such a case, however, the prediction must be carefully phrased on the basis of objective fact to convey an employer's belief as to demonstrably probable consequences beyond his control or to convey a management decision already arrived at to close the plant in case of unionization. If there is any implication that an employer may or may not take action solely on his own initiative for reasons unrelated to economic necessities and known only to him, the statement is no longer a reasonable prediction based on available facts but a threat of retaliation based on misrepresentation and coercion, and as such without the protection of the First Amendment.
 
 
 16
 Id. at 618, 89 S.Ct. at 1942 (citations omitted).
 
 
 17
 This court has noted that under the Gissel analysis the employer's constitutionally protected right of free speech may be circumscribed when in addressing employees he opposes unionization. R. J. Lallier Trucking v. NLRB, 558 F.2d 1322, 1327 (8th Cir. 1977). He must be particularly careful if he "goes further and proposes to predict the adverse effects that unionization may have on his business, his employees, and their incomes or work opportunities." Id.; Accord NLRB v. Intertherm, Inc., 596 F.2d 267, 277 (8th Cir. 1979).
 
 
 18
 The challenged statement of an employer must, of course, be evaluated in context, and the employer's right of free expression must be weighed against the equal right of employees to associate freely for collective bargaining purposes. Gissel, 395 U.S. at 617, 89 S.Ct. at 1941-42; R. J. Lallier Trucking, 558 F.2d at 1327; NLRB v. Crystal Tire Co., 410 F.2d 916, 918 (8th Cir. 1969). This balancing must take into account "the economic dependence of the employees on their employers, and the necessary tendency of the former because of that relationship, to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear." Gissel, 395 U.S. at 617, 89 S.Ct. at 1942.
 
 
 19
 In the present case, the inquiry is whether Bachofer's statements that unionization would result in the closing of the plant were predictions based on objective fact or threats of personal action he would take if a union was formed.
 
 
 20
 Respondent argues that Bachofer offered no objective facts supporting his statements about the likely consequences of unionization. He did not explain the basis for his statements that Jantzen and Artex would pull out or offer other evidence of the financial status of Patsy Bee. The Board contends that, because Bachofer's statements were unverified, and in light of the Company's other antiunion actions, the intended and understood import of Bachofer's statements was not an objective prediction but a threat of retaliation if the Union was successful.
 
 
 21
 Petitioner contends that Bachofer's statements were manifestly reasonable and based on the objective fact that Jantzen and Artex were likely to refuse to do business with Patsy Bee if its employees unionized. Petitioner says that Bachofer made it clear that he was not antiunion, but that based on his twenty-five years in the business, the consequences of unionization he had observed at other plants, the attitude of Jantzen and Artex toward unionized companies, and Patsy Bee's shaky financial status he believed unionization would result in the closing of the Patsy Bee plant.
 
 
 22
 Viewing the record as a whole, we find the inferences drawn by the Board are not supported by the evidence. We find unpersuasive the contention that Bachofer's predictions were based upon "subjective" considerations and as such were impermissible. The evidence, based upon the testimony credited by the ALJ, showed that Bachofer's predictions reflected probable consequences of unionization beyond his personal control.
 
 
 23
 Bachofer stated that he was not personally antiunion but that he believed Jantzen and Artex would refuse to do business with Patsy Bee if its employees unionized. This belief was based on the established policies of Jantzen and Artex against contracting with union companies.[1] He further said that Patsy Bee's financial status was precarious and thus the loss of the Jantzen and Artex contracts would have serious consequences. He discussed the Company's financial health and offered to show interested employees the Company's financial records. Bachofer also noted similar situations he had observed at other plants, including one that had been operated by his father.
 
 
 24
 Bachofer made no threats. His statements were not interspersed with antiunion comments. Bachofer suggested no retaliation against employees but, as the ALJ noted, postulated only "economic consequences reasonably foreseeable as a result of predictable responses of key customers." On the whole, the statements reflected his belief, based upon objective facts, that unionization could have an adverse economic impact on Patsy Bee. In these circumstances, we find the challenged statements were protected speech under § 8(c) of the Act and did not violate § 8(a)(1).
 
 
 25
 The Company also urges that the Board erred in concluding that a bargaining order should issue. In light of our holding above that Bachofer's statements were permissible, and in view of the absence of substantial evidence that traditional remedies would be inadequate, we decline to enforce the order to bargain.
 
 
 26
 In NLRB v. Gissel Packing Co., 395 U.S. 575, 613-15, 89 S.Ct. 1918, 1939-40, 23 L.Ed.2d 547 (1969), the Supreme Court acknowledged two situations in which the Board could issue a bargaining order: (1) where "outrageous" and "pervasive" unfair labor practices preclude a fair and reliable election; and (2) where the union once enjoyed majority status and the unfair labor practices, although less pervasive, "still have the tendency to undermine majority strength and impede the election processes."
 
 
 27
 In both types of cases the Board is required to consider "the possibility of erasing the effects of past practices and of ensuring a fair election (or a fair rerun) by the use of traditional remedies ...." Id. at 614, 89 S.Ct. at 1940. Although the Board has initial discretion in framing an appropriate remedy, we have noted that:
 
 
 28
 Gissel does not mean that the Board may require a bargaining order in every unfair practice case or that a court of appeals may not review an order where abuse of discretion is alleged. Where there exists little or no opportunity for the unfair practice charge to have a pervasive adverse influence upon the employees' sentiment in an election the Board should still revert to the traditional means of democratic ballot.
 
 
 29
 NLRB v. Regal Aluminum, Inc., 436 F.2d 525, 529 (8th Cir. 1971). Accord NLRB v. Hart Beverage Co., 445 F.2d 415, 420-21 (8th Cir. 1971); Arbie Mineral Feed Co. v. NLRB, 438 F.2d 940, 944 (8th Cir. 1971).
 
 
 30
 In this case the evidence establishes that the unfair labor practices produced little or no impact upon the employees' allegiance to the Union. NLRB v. Hart Beverage Co., 445 F.2d 415, 420-21 (8th Cir. 1971); Arbie Mineral Feed Co. v. NLRB, 438 F.2d 940, 943-45 (8th Cir. 1971). Most acts found to be unfair labor practices occurred at the outset of the Union organizing campaign. Only three incidents occurred after the Union achieved a card majority.[2] In two of those instances the Board found that comments by Company officials suggested antiunion sentiment. In the third, a supervisor threatened an employee with a "permanent layoff." In the context of the three month organizing campaign, the ALJ found that these three isolated incidents had no significant effect on Union strength.
 
 
 31
 In issuing the bargaining order, the Board relied primarily on its conclusion that president Bachofer's statements were unprotected and constituted "direct threats." No further explanation was offered other than a conclusory statement that "the odds for a free choice in a rerun election are minimal." Cf. Red Oaks Nursing Home, Inc. v. NLRB, 633 F.2d 503, 508-12 (7th Cir. 1980) (denying enforcement of a bargaining order where the Board failed to explain its choice of remedy).
 
 
 32
 Having found Bachofer's statements protected, and in the absence of substantial evidence that the unfair labor practices would impede a fair election, we hold that the Board abused its discretion by issuing a bargaining order. Enforcement is denied and the case remanded to the Board for further proceedings consistent with this opinion.
 
 
 33
 McMILLIAN, Circuit Judge, dissenting.
 
 
 34
 I respectfully dissent. I would enforce the order of the Board. First, in my view, the Board's characterization of the company president's remarks as threats is supported by substantial evidence in the record as a whole. I do not doubt that the company president sincerely believed that one or two of the company's major customers would cancel their contracts if the union organizational campaign was successful. However, an employer's sincere belief is not enough. "Conveyance of the employer's belief, even though sincere, that unionization will or may result in the closing of the plant is not a statement of fact unless, which is most improbable, the eventuality of closing is capable of proof." NLRB v. Gissel Packing Co., 395 U.S. 575, 618-19, 89 S.Ct. 1918, 1942, 23 L.Ed.2d 547 (1969). Here, the company provided no evidence that unionization would in fact cause the loss of two major customers or that the loss of these customers inevitably would cause the plant to close.
 
 
 35
 Second, I share in part the majority's concern that the Board is often too conclusory in ordering collective bargaining. See NLRB v. Permanent Label Corp., 106 L.R.R.M. 2211 (3d Cir. 1981); Red Oaks Nursing Home, Inc. v. NLRB, 633 F.2d 503 (7th Cir. 1980). But see NLRB v. K & K Gourmet Meats, Inc., 640 F.2d 460, 470-74 (3d Cir. 1981) (Gibbons, J., dissenting); NLRB v. Permanent Label Corp., supra, 657 F.2d 512, 106 L.R.R.M. at 2221-22 (Seitz, C. J., dissenting); Hedstrom Co. v. NLRB, 629 F.2d 305 (3d Cir. 1980) (banc), cert. denied, --- U.S. ----, 101 S.Ct. 1699, 68 L.Ed.2d 196 (1981); Chromalloy Mining & Minerals Alaska Division, Chromalloy American Corp. v. NLRB, 620 F.2d 1120, 1128-33 (5th Cir. 1980). In my view, however, the Board has adequately furnished the court with an articulation of its reasons for imposing a bargaining order in the present case. After reviewing the company's unfair labor practices, the Board concluded that a bargaining order was warranted because of the company's systematic efforts to thwart the right of its employees to organize, the company's intentional interference with the representational election, and the adverse and continuing effect of the company president's threats to close the plant.[1] Because there was a showing that the union at one point enjoyed majority support, I conclude the Board reasonably found the present case was marked by serious unfair labor practices which, although perhaps not "outrageous" and "pervasive," "nonetheless still have the tendency to undermine majority strength and impede the election process," NLRB v. Gissel Packing Co., supra, 398 U.S. at 614, 89 S.Ct. at 1940, and therefore appropriately issued the bargaining order.
 
 
 36
 I would enforce the order of the Board.
 
 
 
 [1]
 A Jantzen representative who visited the Patsy Bee plant during the Union organizing campaign reaffirmed his company's policy by noting to Bachofer that the Jantzen organization was "one hundred per cent non-union."
 
 
 [2]
 We assume for purposes of this discussion that the Union did obtain the valid signatures of a majority of Patsy Bee employees
 
 
 [1]
 "A threat to close the plant, when made in the context of the union organization of the employees, has long been recognized as one of the most potent instruments of employer interference with the right of employees to organize under the National Labor Relations Act." Chemvet Laboratories, Inc. v. NLRB, 497 F.2d 445, 448 (8th Cir. 1974)