**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FREMONT MANUFACTURING COMPANY, INC., Respondent.**

No. 76–1977.

United States Court of Appeals, Eighth Circuit.

Submitted May 19, 1977.

Decided July 6, 1977.

**890**

Christine Weiner Peterson, Atty., N. L. R. B., Washington, D. C., for petitioner; John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Paul J. Spielberg, Deputy Asst. Gen. Counsel, N. L. R. B., Washington, D. C., on brief.

D. O. Rasmussen, Jr., and John C. Toelle, Omaha, Neb., for respondent; Rasmussen & Toelle, Omaha, Neb.

Before GIBSON, Chief Judge, BRIGHT and HENLEY, Circuit Judges.

PER CURIAM.

The National Labor Relations Board seeks enforcement of its order finding Fremont Manufacturing Company in violation of §§ 8(a)(1), 8(a)(2) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 151 et seq. (1970).[1] The violations at issue involve Fremont's actions subsequent to the instigation by one of its employees of a union organizing campaign.[2]

Fremont, a subsidiary of the Oilgear Company, maintains a plant for the manufacturer of hydraulic components in Fremont, Nebraska. Norma Killion was hired by Fremont as a machine operator on March 31, 1975, approximately two months after the completion and opening of the Fremont plant. In late June 1975, Killion began an organizational campaign for the United Steelworkers of America, AFL–CIO. She conducted most of her organizational activities at the Fremont plant. Although her campaign was indisputably covert, she succeeded in obtaining signed union authorization cards from ten of the approximately 30 employees at Fremont within a short period of time. On July 3, 1975, a plant supervisor, Jess Jenkins, observed Killion soliciting and securing the signatures of two fellow employees on union authorization cards. On July 10, 1975, Killion was discharged without warning by Fremont, allegedly because of her failure to remain at her work station. The record shows that Killion left her work station in order to obtain assistance with her machine, which was malfunctioning, and to request that exhaust fans be turned on to dispel paint fumes. Despite her good work record, which included satisfactory completion of a 60-day probationary period and praise from her employer on at least two separate occasions regarding the quality of her work, Killion was peremptorily discharged because "Well, you haven't done anything all day but walk around." The Board found, on the basis of the foregoing facts, that Fremont's explanation for Killion's abrupt dismissal was a pretext; that the motivating cause was actually her activity on behalf of the union; and that this conduct violated §§ 8(a)(3) and 8(a)(1) of the Act.

■ Fremont contends that the Board's findings are not based on substantial evidence on the record as a whole because the Board's inferences from the evidence were "arbitrary, capricious and unreasonable." In analyzing the evidence, whether circumstantial or direct, the Board

---

1. The initial order and decision in this case were rendered by an administrative law judge. Fremont's exceptions to his decision were considered by the Board, which then affirmed and adopted his rulings, findings and conclusions. The Board's opinion, which makes minor modifications in the administrative law judge's decision and order, is reported at 224 N.L.R.B. 79 (1976).

2. In addition to the contested violations discussed here, the Board found that Fremont had violated § 8(a)(1) of the Act by promulgating and implementing overly broad solicitation and distribution rules and by interrogating several employees about employee participation in the union's handbilling of the plant. Fremont did not file exceptions to the rulings on these issues. Accordingly, it is precluded by § 10(e) of the Act from contesting these rulings here. N.L.R.B. v. Douglas & Lomason Co., 443 F.2d 291, 293 (8th Cir. 1971).

is free to draw any reasonable inferences. *N.L.R.B. v. Melrose Processing Co.*, 351 F.2d 693, 698 (8th Cir. 1965). The abrupt discharge of a known union organizer shortly after the initiation of a union organization campaign supports an inference of discrimination. *Cf. N. L. R. B. v. Broyhill Co.*, 514 F.2d 655, 659–60 (8th Cir. 1975); *N. L. R. B. v. Superior Sales, Inc.*, 366 F.2d 229, 233–34 (8th Cir. 1966). The Board could reasonably infer that Fremont had knowledge of Killion's union activity and that it discharged her because of that activity. A close review of the record convinces us that the inferences drawn by the Board relative to Killion's discharge were reasonable and that the Board's findings are supported by substantial evidence on the record as a whole.

Approximately one week after Killion's discharge, Fremont received from the Oilgear Company a revised draft of an employee handbook which Fremont had submitted to Oilgear almost one year before. The revised handbook provided for additional holiday pay, bereavement pay, jury duty pay, report to work pay, a bid procedure for reassignments and a "Progress Team." These new benefits had not been incorporated in the draft handbook forwarded by Fremont to Oilgear in 1974. The Board found that Fremont's granting of these new benefits was designed to thwart the employee attempt at unionization and was, accordingly, violative of § 8(a)(1) of the Act.

Fremont contends that the new benefits were conferred simply to bring benefits at the Fremont plant in line with those provided at Oilgear's Longview, Texas, plant. The Board could reasonably infer that the conferral of these benefits in the midst of a union organization campaign and immediately after the discharge of the chief union organizer was designed to thwart an attempt at unionization. We conclude that the Board's findings on this issue are supported by substantial evidence on the record as a whole.

Fremont distributed the revised handbook to its employees in early August 1975 and began to set up the Progress Team, which consisted of two employees, elected in a company-conducted election, who were to bring employee complaints to the employer. The Board found that Fremont's unilateral creation of the Progress Team constituted unlawful domination and interference with a labor organization in violation of §§ 8(a)(2) and 8(a)(1) of the Act and Fremont recognizes here that the formation of the Progress Team was legally inappropriate. The Board's findings on the Progress Team violation are supported by substantial evidence on the record as a whole.

The petition for enforcement is granted.