METROMEDIA, INC., KMBC–TV, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

Local Union 1259, International Brotherhood of Electrical Workers, AFL–CIO, Intervenor-Petitioner.

INTERNATIONAL PHOTOGRAPHERS OF the MOTION PICTURE INDUSTRY, LOCAL 666, IATSE (AFL–CIO), Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

Nos. 77–1974, 78–1145.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1978.

Decided Oct. 12, 1978.

Rehearing Denied in No. 77–1974, Nov. 24, 1978.

Ross, Circuit Judge, filed a dissenting opinion.

James R. Willard of Spencer, Fane, Britt & Browne, Kansas City, Mo., argued, for petitioner, Metromedia, Inc.; Willard and Michael F. Delaney, Kansas City, Mo., and Paul Kuelthau of Moller, Talent, Kuelthau, Dowell & Fisher, St. Louis, Mo., filed brief.

William A. Jolley of Jolley, Moran, Walsh, Hager & Gordon, Kansas City, Mo., argued and filed brief for petitioner-intervenor, IBEW.

Bernard M. Mamet (argued), and Paul T. Berkowitz, Chicago, Ill., filed brief for petitioner, IATSE.

Howard E. Perlstein (argued), Atty., N. L. R. B., Washington, D. C., John S. Irving, John E. Higgins, Jr., Carl L. Taylor and Elliott Moore, Washington, D. C., filed brief for respondent, N. L. R. B.

Before LAY, HEANEY and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

This case is before the Court on the petition of Metromedia, Inc., for review of a decision of the National Labor Relations Board finding that Metromedia violated § 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* (1976), by failing to bargain in good faith with the International Photographers of the Motion Picture Industry, Local 666 (IATSE). The Board cross applied for enforcement of its order. The International Brotherhood of Electrical Workers, Local 1259 (IBEW) intervened in support of Metromedia's petition. Subsequent to the filing of Metromedia's petition in this Court, IATSE petitioned the United States Court of Appeals for the District of Columbia for modification of the Board's remedial order. Pursuant to 28 U.S.C. § 2112(a) (1976), IATSE's petition was transferred to this Court and the cases were consolidated for briefing and argument. Jurisdiction is predicated on § 10(e) and (f) of the Act. We affirm the Board's finding that Metromedia committed unfair labor practices, but remand for modification of the Board's remedial order.

Metromedia owns a number of television stations, among them KMBC–TV. Employees of KMBC–TV are represented by several different unions including IATSE and IBEW. The present controversy derives from the recent development of the "minicam", a miniature television camera now widely used in the television industry.

In April, 1974, IATSE was certified to represent an appropriate bargaining unit consisting of all "news department motion picture cameramen" at KMBC–TV. At that time, KMBC–TV employed five such cameramen. They used portable film cameras and worked in the news department under the supervision of the news director. Their job was to film news events and to edit the film for broadcast. Frequently, cameramen worked with reporters in teams. The reporter would indicate generally what he wanted filmed and the cameraman would determine the appropriate composition, camera angle and focal length to capture the scene. The cameraman then edited the film to conform to the reporter's script. At other times, cameramen worked alone, covering fast-breaking news events such as fires or wrecks, or small stories not warranting the presence of a reporter. In such cases, the cameraman had full responsibility for the content of the coverage.

By 1974, the station had decided to acquire two minicams to cover news events and for commercial purposes. Minicams are lightweight portable television cameras which operate on the same electronic principles as the larger studio television equipment. They produce electric signals or volts, which may be sent directly to television transmitters permitting live broadcast from remote locations, or recorded on videotape and preserved for later broadcast. Videotape is edited electronically and may be erased and reused. In contrast, the motion picture camera records the image on film which must be developed and does not permit live broadcast. Film is edited by cutting and splicing, precluding reuse.

Despite the technological differences, operation of the minicam is, in many respects, similar to the operation of the motion picture camera. The lenses, framing, composition, focus and focal length are basically the same. The station intended to use the minicam equipment for news-gathering purposes previously performed by motion picture cameras. It stipulated that it had no present intention of using the minicams for live broadcast. Thus, for this use of minicams, the same skills and judgment in gathering news and in editing material to conform to a script are required.

Metromedia determined that it could make optimal use of the minicams if it were free to assign employees from all departments and all bargaining units to use them. Pursuant to this belief, it submitted a contract proposal to IATSE in October or November of 1974, which included a provision that cameramen could be assigned to operate "portable video cameras and associated equipment," and that all cameramen's work was nonexclusive, i. e., could be performed by persons not members of the unit. The union agreed with the first provision, but objected to the nonexclusivity provision. Contract negotiations with IATSE continued through December without agreement. Following the December meeting, there were no further negotiations until June 4, 1975.

In the interim, Metromedia began renegotiating the IBEW contract which was to expire in April, 1975. IBEW represented all engineering employees at the station. These employees had traditionally operated and maintained the large studio television equipment. They were in a separate engineering department and had never performed news-gathering functions.

Pursuant to its plan, the company submitted a contract proposal to the IBEW which, with respect to the use of minicams, was similar to that earlier proposed to

IATSE, i. e., nonexclusive use of minicams by all employees. The IBEW adamantly refused to agree to any such provision. It took the position that the minicam work belonged exclusively to its members under the jurisdictional clause in the existing collective bargaining agreement.[1] Similar jurisdictional language had been in IBEW contracts since 1942, when it began representing engineering employees at the station.

Faced with IBEW's insistence upon exclusive use of minicams by its members, the company finally proposed a new classification within the IBEW unit of "news engineers" to cover news events with portable video cameras and recording equipment and with motion picture cameras. The IBEW accepted the proposal and contract agreement was reached on May 6, 1975. Under this contract, news engineers were subject to special employment conditions not applicable to other engineers, including special overtime, seniority and licensing provisions. The jurisdictional language remained unchanged from the prior contract.

Negotiations with IATSE resumed on June 4, 1975. The company submitted to the union a revised proposal omitting all reference to the operation of minicams. It explained that under the new IBEW contract, IBEW had exclusive jurisdiction over minicams and the company was, therefore, not free to negotiate with IATSE over any minicam work. IATSE responded that the assignment to the IBEW constituted an unfair labor practice.

Negotiations with IATSE continued throughout the summer and fall, with the parties reaching agreement on most issues but not on the minicam. The company offered both a special severance pay plan, effective in the event of layoffs, and employment guarantees for present cameramen and their replacements for some agreed upon duration. Both proposals,

---

1. This agreement provided that the IBEW had jurisdiction over the "operation, maintenance and repair of television broadcast * * * apparatus used for broadcasting, * * * by means of which electricity is applied in the transmission or transference, production, or re- production of voice, sound or vision, * * * including all types of audio and video recordings." Specifically excluded from this jurisdiction was all work "relating to the production or preparation of film."

however, were ultimately rejected by the union. In December, the parties signed a final agreement that left open the minicam issue.

On November 7, 1975, IATSE filed unfair labor practice charges against Metromedia. The General Counsel issued a complaint on March 18, 1976. Prior to the hearing on the complaint, Metromedia advised two cameramen, members of the IATSE unit, that they would be assigned to operate the minicams for news-gathering purposes, but that they would have to join the IBEW before they could use the equipment. As before, they would continue to be under the supervision of the news department. It was not revealed whether the station intended to replace the transferred cameramen with new cameramen.

The administrative law judge held that the matter was a work assignment dispute and that it was not appropriate to decide such disputes in the context of a § 8(a)(5) unfair labor practice proceeding. He recommended that the complaint be dismissed.

The Board held, however, that Metromedia had violated § 8(a)(5) and (1) of the Act by:

(1) failing to bargain in good faith with the IATSE over the operation of minicams; (2) unilaterally assigning newly created jobs to the IBEW, an action which will alter the terms and conditions of employment of IATSE unit members, without notice to or bargaining with that labor organization; (3) commencing to implement its decision that employees in the IATSE unit would be required to become members of the unit represented by the IBEW; and (4) all of the foregoing conduct, undermining the status of IATSE as the certified bargaining representative of the employees in the appropriate unit herein.[2] (Footnotes omitted.)

The Board ordered the company to cease and desist from the described unfair labor practices, and affirmatively ordered it to bargain with IATSE over the operation of minicams at KMBC–TV, to rescind that portion of its collective bargaining agreement with IBEW granting minicam work exclusively to IBEW, and to rescind its decision requiring that members of the IATSE unit become members of the IBEW unit in order to operate the minicam equipment. The Board specifically declined to order Metromedia to assign the minicam work to employees in the IATSE unit.

### Unfair Labor Practices

Under § 8(a)(5) of the Act, it is an unfair labor practice for an employer to refuse to bargain collectively with the representative of his employees. The duty to bargain is defined by § 8(d) as the duty to "meet * * * and confer in good faith with respect to wages, hours, and other terms and conditions of employment." One such mandatory subject of bargaining is the impact of technological innovation on the bargaining unit. *Omaha Typographical U., No. 190 v. N. L. R. B.*, 545 F.2d 1138, 1141 (8th Cir. 1976); *N. L. R. B. v. Columbia Tribune Publishing Company*, 495 F.2d 1384, 1391 (8th Cir. 1974). It follows that refusal to discuss or refusal to discuss in good faith such changes with the union representing employees who will be affected by the innovation constitutes a § 8(a)(5) unfair labor practice. Similarly, § 8(a)(5) is violated when an employer, without first consulting a union with which it is carrying on contract negotiations, unilaterally institutes changes in conditions of employment which are in fact under discussion. *N. L. R. B. v. Katz*, 369 U.S. 736, 743, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962).

It is clear that minicams are a technological innovation with the potential to profoundly affect the work of the motion picture cameramen. In view of their many advantages, it is likely that they will increasingly be employed as substitutes for motion picture cameras. The company was, therefore, obligated to bargain in good faith with IATSE over their introduction and use. See *N. L. R. B. v. Columbia Tribune Publishing Company, supra.*

---

2. The Board's decision is reported at 232 NLRB No. 76; 96 L.R.R.M. 1475 (1977).

■ Initially, Metromedia did bargain with IATSE regarding the use of minicams. However, without reaching any agreement and without informing IATSE, the company later bowed to the pressure of the IBEW and awarded exclusive minicam jurisdiction to it. This unilateral decision of the company was a clear violation of § 8(a)(5). *See N. L. R. B. v. Katz, supra.* Similarly, the company's subsequent refusal to bargain with IATSE about the use of minicams also violated § 8(a)(5).

■ We reject the company's argument that it made no new award of jurisdiction to the IBEW in the 1975 contract. The jurisdictional language in the prior IBEW contracts was probably broad enough to include the operation of minicams. IATSE, however, also had a claim to the work since the company intended to use the minicams for some tasks previously performed with motion picture cameras by members of the IATSE unit. The fact is that minicams were simply not considered when the original IBEW jurisdictional language was drafted. Nor were they considered at the time "news department motion picture cameramen" was designated an appropriate bargaining unit with IATSE as the certified representative. The minicam work was essentially new work and could not be controlled either by jurisdictional language or by a unit certification preexisting the contemplation of minicams. Under these circumstances, the employer did not have the right to enter unilaterally into an exclusive agreement with one union without notifying and bargaining in good faith with the other.

■ Metromedia also argues that, under our *Columbia Tribune* decision, it was required only to bargain over the effect of the technological change upon unit operations, and that it met this requirement by offering special severance pay and employment guarantee proposals which the union rejected. We disagree. Metromedia did not attempt to bargain in good faith with IATSE regarding the changes the minicam would make in IATSE unit work. Rather, it presented the IATSE representatives with a *fait accompli.* Metromedia's subsequent proposals were merely offers to bargain over the effect upon the cameramen of Metromedia's unilateral award of exclusive minicam jurisdiction to the IBEW. This is not the good faith bargaining about the effect of technological change upon unit work required by *Columbia Tribune.*

■ Generally, whether a party has failed to bargain in good faith " 'involves a finding of motive or state of mind,' which must be inferred from the evidence viewed as a whole." *N. L. R. B. v. Columbia Tribune Publishing Company, supra* 495 F.2d at 1391. We hold the Board's finding that the company failed to bargain in good faith is supported by substantial evidence. *See R. J. Lallier Trucking v. N. L. R. B.,* 558 F.2d 1322, 1325 (8th Cir. 1977). We note, however, that where, as here, there has been a flat refusal to bargain over a mandatory subject, § 8(a)(5) "may be violated without a general failure of subjective good faith; for there is no occasion to consider the issue of good faith if a party has refused even to negotiate *in fact* —'to meet * * * and confer'—about any of the mandatory subjects." *N. L. R. B. v. Katz, supra* 369 U.S. at 743, 82 S.Ct. at 1111 (footnote omitted). This is true even when "the employer has every desire to reach agreement with the union upon an over-all collective agreement and earnestly and in all good faith bargains to that end." *Id.*

■ Section 8(a)(1) provides that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7." Among the rights guaranteed employees in § 7 are the rights to form and join labor organizations and to bargain collectively through representatives of their own choosing. Thus, the company's refusal to bargain with the representative of its employees in violation of § 8(a)(5) derivatively violated § 8(a)(1) by interfering with the collective bargaining rights of the employees.

■ The company also committed independent violations of § 8(a)(1) by offering

minicam jobs to cameramen conditioned upon their joining the IBEW. This was in complete disregard of the status of IATSE as the collective bargaining representative of the news cameramen. Clearly, this conduct had the tendency to interfere with the cameramen's rights to be represented by the representative they had chosen in violation of § 8(a)(1). *See Russell Stover Candies, Inc. v. N. L. R. B.*, 551 F.2d 204, 208 (8th Cir. 1977).

■ Metromedia has raised several defenses, none of which we find persuasive. First, it contends that the complaint was barred by § 10(b) of the Act which, in relevant part, provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board." Metromedia's position is that the unfair labor practice complained of was its decision to grant exclusive minicam jurisdiction to the IBEW. This decision became binding upon Metromedia at the conclusion of its contract negotiations with IBEW on May 6, which was more than six months prior to IATSE's filing of charges on November 7, 1975. The substance of the violation is, however, the company's refusal to bargain with IATSE regarding the minicams, which refusal occurred on June 4, 1975, and thereafter. Moreover, the six-month limitation period "does not begin to run until the aggrieved party knew or should have known that his statutory rights were violated." *Wis. River Val. Dist. Council, Etc. v. N. L. R. B.*, 532 F.2d 47, 53 (7th Cir. 1976). *Accord, N. L. R. B. v. Allied Prod. Corp., Richard Bros. Div.*, 548 F.2d 644, 650 (6th Cir. 1977); *N. L. R. B. v. Shawnee Industries, Inc.*, 333 F.2d 221, 224 (10th Cir. 1964). Substantial evidence supports the Board's finding that IATSE was not advised of the terms of the IBEW agreement before June 4, 1975.[3] This was well within the § 10(b) period and the complaint is, therefore, not barred.

■ Second, Metromedia argues that, by its inaction, IATSE waived its right to bargain over the operation of minicams. In support, Metromedia points to IATSE's failure to seek negotiations with the company between December of 1974 and June of 1975 even though it was aware that the IBEW contract was to be renegotiated that spring and that use of minicams was likely to be at issue. The short answer is that any waiver of the statutory right to bargain over a mandatory subject of bargaining must be clear and unmistakable. *N L Industries, Inc. v. N. L. R. B.*, 536 F.2d 786, 789 (8th Cir. 1976). Waiver of this right cannot be assumed. The Board decisions upon which the company relies are inapposite. In the cases cited, the union failed to object after it was advised of the intended company decision, even though it was given opportunity to do so. *See Bernal, Inc.*, 206 N.L.R.B. 72 (1973); *Murphy Diesel Co.*, 179 N.L.R.B. 149 (1969); *American Buslines, Inc.*, 164 N.L.R.B. 1055 (1967). Here, the union was informed only after the company decision was final, and the union objected strenuously upon learning of it.

Finally, Metromedia argues that the present dispute is essentially a jurisdictional dispute and that the unfair labor practice charges must, therefore, be dismissed under the Board's decisions in *Brady-Hamilton Stevedore Co.*, 198 N.L.R.B. 147 (1972), *petition for review denied sub nom. International Union of Operating Engineers, Local 701 v. N. L. R. B.*, 504 F.2d 1222 (9th Cir. 1974), and *J. L. Allen Co.*, 199 N.L.R.B. 675 (1972).

■ There are two different, though related, types of disputes: "(1) a controversy as to whether certain work should be performed by workers in one bargaining unit or those in another; or (2) a controversy as to which union should represent the employees doing particular work." *Carey v. Westinghouse Corp.*, 375 U.S. 261, 263, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). The former is characterized as a "jurisdictional" or work assignment dispute. Such disputes

---

**3.** We reject Metromedia's argument that the mere fact IATSE was on notice of the pending IBEW negotiations was notice sufficient to run the § 10(b) period.

are appropriately resolved in a § 10(k) proceeding, which is triggered only by a strike or threat of a strike and the filing of a § 8(b)(4)(D) unfair labor practice charge. The latter is a "representational" dispute, involving which of two of more unions is the appropriate bargaining unit for certain employees. *Id.* at 268, 84 S.Ct. 401. Such disputes may be resolved in the context of a § 8(a)(5) unfair labor practice proceeding.

■ In *Brady-Hamilton Stevedore Co., supra,* the Board dismissed a § 8(a)(3) unfair labor practice charge, holding that the sanctions of § 8(a)(3) are not applicable "where the actions of all parties are part and parcel of an acute, bona fide jurisdictional work dispute." 198 N.L.R.B. at 148. The rule was applied in two subsequent cases to unfair labor practice charges under § 8(a)(5) and (1), and § 8(b)(2) and (b)(1)(A). *J. L. Allen Co., supra; Cornell-Leach, Gibson Project,* 212 N.L.R.B. 495 (1974). The rule derives from the fact that the § 10(k) mechanism was specially designed to resolve jurisdictional disputes. When an alleged unfair labor practice is inseparably intertwined with the other conduct in the course of a jurisdictional dispute, the Board fears that to find and remedy any such violation would interfere with the § 10(k) remedial scheme. *J. L. Allen Co., supra* at 676. Thus, when a dispute is determined to be essentially jurisdictional, the rule requires that related unfair labor practice charges be dismissed.

■ We express no opinion on the merits of the rule if applied in an appropriate case[4] because we agree with the Board's assessment that the crux of this dispute is representational rather than jurisdictional. The line between jurisdictional and representational disputes is often blurred. *Carey v. Westinghouse Corp., supra* 375 U.S. at

263, 84 S.Ct. 401. Nevertheless, where, as here, the employer has determined which employees it intends to use for particular work, but has told them they must transfer to another union in order to do the work the dispute is, in the language of *Carey,* "a controversy as to which union shall represent the employees doing particular work." The doctrine elucidated in *Brady-Hamilton Stevedore Co., supra,* therefore, does not apply.

*The Remedy*

To remedy the described unfair labor practices, the Board issued the following order:

Respondent, Metromedia, Inc.—KMBC–TV, shall:

1. Cease and desist from:

(a) Refusing to bargain collectively over the question of minicams with * * IATSE * * * as the exclusive collective-bargaining representative of the employees in the following appropriate unit:

All full-time and regular part-time news department motion picture cameramen of Metromedia, Inc., at its KMBC–TV station. * * *

(b) Unilaterally assigning the operation of minicams to the employees in the unit represented by * * * IBEW, * * * without prior notification to or bargaining with IATSE.

(c) Taking action to implement its decision that employees in the above-described unit represented by IATSE would be required to become members of the unit represented by IBEW.

(b) Implementing that portion of the collective-bargaining agreement granting minicam work exclusively to employees represented by the IBEW.

\* \* \* \* \* \*

4. We note, however, that the holding of *Brady-Hamilton Stevedore Co.,* 198 N.L.R.B. 147 (1972), *petition for review denied sub nom. International Union of Operating Engineers, Local 701 v. N.L.R.B.,* 504 F.2d 1222 (9th Cir. 1974), and *J. L. Allen Co.,* 199 N.L.R.B. 675 (1972), elicited sharp and well-considered dissent from two members of the Board. Subsequent decisions suggest there may be some question whether the Board will continue to adhere to the rule. *See Bakery Wagon Drivers & Salesmen, Local 484,* 214 N.L.R.B. 891 (1974). New members of the Board have expressly refrained from indicating any opinion on the issue. *See Metromedia, Inc., supra* at 96 L.R.R.M. 1477 n.17; *Local 418, Sheet Metal Workers International Association,* 227 N.L. R.B. 300, 302, n.6 (1977).

(2) Take the following affirmative action designated to effectuate the policies of the Act:

(a) Upon request, bargain in good faith with IATSE over the operation of minicams at Respondent's Kansas City, Missouri, facility.

(b) Notify and, upon request, bargain in good faith with IATSE about any unilateral changes in the terms and conditions of employment of employees in the bargaining unit represented by such labor organization.

(c) Rescind that portion of its collective-bargaining agreement with IBEW granting minicam work exclusively to employees represented by IBEW.

(d) Rescind its decision assigning operation of the minicams to the employees in the unit represented by IBEW and the requirement that employees in the above-described unit represented by IATSE become members of the unit represented by IBEW in order to operate such cameras.

(e) Post [appropriate notices].

The effect of this order, as we read it, is to restore the status quo existing prior to Metromedia's unilateral award of exclusive minicam jurisdiction to the IBEW. Clearly, the order does not purport to make an exclusive assignment of the minicam work to IATSE.[5] Thus, although Metromedia is ordered to bargain with IATSE over the operation of minicams, Metromedia is also free to bargain with the IBEW as well.

We believe the Board's remedy is inadequate. The order is not responsive to the issues raised and fails to offer any meaningful resolution of this dispute. Indeed, it is an open invitation for one or more of the unions to institute a strike. The Board should have gone a step further and clarified the appropriate bargaining units.[6]

■■■■ The fundamental policy of the National Labor Relations Act is self-determination. Employees are entitled to be represented by the union they themselves select. As a preliminary matter, however, the appropriate bargaining units must be defined. Where, as here, the parties cannot agree as to the unit in which certain employees should be included, the Board has the responsibility of making this determination—of determining the jobs that are sufficiently job related to be appropriately grouped together for election and bargaining purposes. Resolution of this dispute requires, then, that the Board determine whether station employees who operate minicams for news-gathering purposes are appropriately included in the bargaining unit defined by "news department motion picture cameramen," or in some other existing unit. Alternatively, the Board may conclude that the minicams so changed the operations of the station that the prior bargaining units are no longer appropriate and that new bargaining units must be defined. *See Graphic Arts International Union, AFL–CIO v. N.L.R.B.,* 164 U.S.App.D.C. 228, 505 F.2d 335 (1974); *Smith Steel Workers v. A. O. Smith Corporation,* 420 F.2d 1 (7th Cir. 1969).

If the Board determines that employees engaged in news gathering with minicams are appropriately included in an existing bargaining unit, the company will be obligated to bargain over the terms and conditions of that work with the union represent-

---

**5.** This is explicit in the Board's decision. "IATSE has requested that as part of the remedy the Board order Respondent to assign the minicam work to employees in the IATSE unit. We consider such an award of work inappropriate in this proceeding and, therefore, we deny IATSE's request." *96 L.R.R.M.* at 1478 n.23.

**6.** In its brief, the Board contends that it lacks the authority to force a work assignment decision on the parties as such a decision is essentially contractual and must be left to the parties. *See Porter Co. v. NLRB,* 397 U.S. 99, 108,

90 S.Ct. 821, 25 L.Ed.2d 146 (1970). This misconstrues the remedy for a representational dispute. The Board's obligation here is to define the appropriate bargaining units not to make a work assignment. The Board cannot have it both ways. It cannot argue that this dispute is essentially representational *so as to* escape the application of its own *Brady-Hamilton Stevedore Co.* doctrine and then refuse to resolve the dispute by saying it is really a jurisdictional-contractual question that the Board is without power to resolve.

ing employees in that unit. Unit employees are, of course, free to file a representation petition should they no longer wish to be represented by the present unit representative. If the Board finds that the existing bargaining units are no longer appropriate, the employees or the employer may petition for election in the newly defined unit or units. The Board should act promptly on any such petitions and conduct whatever election or authorization card check necessary to ensure that the employees are represented by the union they desire.

It is true that the parties to the controversy can obtain a determination by filing a unit clarification petition. That, however, should not be required. "The unit clarification procedure is designed to present an *alternative* to an unfair labor practice charge as a means for obtaining an official determination for the correct bargaining units." *Smith Steel Workers v. A. O. Smith Corporation, supra* at 9 (emphasis added). *Accord, Carey v. Westinghouse Corp., supra* 375 U.S. at 266–267, 84 S.Ct. 401. Clarification of the units is, therefore, entirely appropriate in this proceeding. Additionally, "one of the inherent by-products of automation is a blurring of the bargaining unit boundaries." *N.L.R.B. v. Columbia Tribune Publishing Company, supra* 495 F.2d at 1390. Thus, the Board has resolved other disputes arising from changes in company operations due to new technology by making unit determinations in the context of unfair labor practice proceedings. *See id.; Graphic Arts International Union, AFL–CIO v. N.L.R.B., supra; Smith Steel Workers v. A. O. Smith Corporation, supra.*

The Board ordered Metromedia to bargain with IATSE as the representative of employees in the unit of "news department motion picture cameramen." The unit description language is identical to that in the original IATSE certification. We do not interpret this to mean that the Board has concluded in this proceeding that the innovation of minicams requires no change in existing bargaining units. Rather, the Board probably believed that any reconsideration of the appropriate units would be premature in view of the fact that at the time of the hearing, no minicams were in operation at KMBC–TV. We disagree that such a determination would have been premature. It is undisputed that minicams were to go into operation immediately, and we believe there is sufficient evidence in the record for the Board to have made the necessary determination.

This dispute has already been exceedingly protracted. We see no advantage in avoiding resolution in this proceeding and waiting for the parties to file for unit clarification. We, therefore, remand to the Board for reconsideration of the propriety of existing bargaining units in view of the use of minicams for purposes previously performed by motion picture cameras. We recognize that it has been more than two years since the hearing in this case. The Board may, therefore, order a further hearing and allow the parties to introduce additional evidence so that the unit determination will be consistent with present station operations.

In conclusion, we affirm the Board's holding that Metromedia committed unfair labor practices within the meaning of § 8(a)(5) and (1) of the Act. We remand, however, for modification of the Board's remedial order consistent with this opinion.

ROSS, Circuit Judge, dissenting.

I agree with Administrative Law Judge Rose that the language in the collective bargaining agreement between Metromedia and IBEW, set forth in footnote 1 of Judge Heaney's opinion, gave IBEW exclusive jurisdiction over the operators of the minicams.

I also agree with the administrative law judge that this was a work assignment dispute and that it was not appropriate to decide it in the context of a § 8(a)(5) unfair labor practice proceeding. For these, and the other reasons cited by Judge Rose, I would deny enforcement and direct the Board to dismiss the complaint.